UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IRENE TARANGO, | ) No. CV 04-10064-PLA |
|     Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
|     Defendant. | ) |

**I.**

**<u>PROCEEDINGS</u>**

Plaintiff filed this action on February 18, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on March 28, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 12, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 19, 1958. [Administrative Record ("AR") at 85.] She attended school through either the eighth or ninth grade. [AR at 32, 112.] Plaintiff has no vocationally relevant past work experience. [AR at 17, 107.]

On July 31, 2002, plaintiff filed an application for Supplemental Security Income benefits, alleging that she had been unable to work since December 15, 2000, due to, among other things, anxiety, high blood pressure, high cholesterol, forgetfulness, shakiness, and heart palpitations. [AR at 85-97, 101, 105-106.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on November 5, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 29-58.] A vocational expert also testified. [AR at 51-56.] On February 27, 2004, the ALJ found that plaintiff maintained the ability to perform a certain range of medium work.[1] [AR at 16-25.] When the Appeals Council denied review on November 15, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). The ALJ further concluded that plaintiff is capable of standing, walking, or sitting for six hours out of an eight hour day, and that she is "moderately limited in her ability to perform detailed work activity, to make work-related judgments, to interact appropriately with the public, supervisors and co-workers, and to respond appropriately to work pressures and changes in a usual work setting." [AR at 23.]

In this context, the term substantial evidence means more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are disabled for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a severe impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments (Listing) set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 17, 24.] At step two, the ALJ concluded that plaintiff's impairments -- hypertension, obesity, and mood disorder (not otherwise specified ("NOS")) -- are severe. [Id.] The ALJ found at step three that the impairments do not meet or equal any impairments in the Listing. [AR at 17-18, 24.] The ALJ further determined that plaintiff is able to perform a range of medium work with certain restrictions. [AR at 23, 25.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 23, 25.] At step five, the ALJ determined that based on plaintiff's age, educational background, work experience, and residual functional capacity, she is capable of successfully adjusting to work that exists in significant numbers in the national economy. [AR at 24-25.] Thus, the ALJ found plaintiff to be not disabled. [Id.]

/
/
/
/

4

# V.

# THE ALJ'S DECISION

Plaintiff contends the following: (1) the ALJ failed to propound a complete hypothetical to the vocational expert ("VE"); (2) the ALJ erred in identifying appropriate work activity; and (3) the ALJ failed to properly consider the Listing of Impairments at step three of the sequential analysis. See Joint Stipulation ("Joint Stip.") at 4. For the reasons explained below, the Court concludes that remand is warranted.

**THE ALJ ERRED BY NOT PROPERLY CONSIDERING THE DIAGNOSIS OF PLAINTIFF'S BORDERLINE INTELLECTUAL FUNCTIONING**

According to plaintiff, the ALJ "found that the opinion of Harrell Reznick, Ph.D, the psychological examiner ..., was consistent with the ALJ's findings." Joint Stip. at 4. Although Dr. Reznick diagnosed plaintiff with, inter alia, borderline intellectual functioning, the ALJ did not include this finding in the hypothetical propounded to the VE. Thus, plaintiff argues, the ALJ erred as "[b]orderline intellectual functioning is a non-exertional limitation that must be considered and posed to a vocational expert." Id. at 5.

The evidence relevant to plaintiff's contention shows that plaintiff underwent two mental evaluations. [AR at 250-54, 365-72.] The first, conducted on December 28, 2002, by Dr. Barry Edelman, resulted in a diagnosis of panic disorder with moderate agoraphobia (although it appears Dr. Edelman may have meant acrophobia), depressive disorder (NOS), and learning disorder (NOS). Dr. Edelman also noted that plaintiff has a history of hypertension and headaches, and a "severe" history of learning difficulties. [AR at 253-54.] He assigned plaintiff a current Global Assessment of Functioning ("GAF") score of 60,[2] and found that she would be able

---

[2] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th Ed. 2000). A GAF score from 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See DSM-IV, at 34.

to understand, remember, and follow simple instructions and work at simple tasks at a normal pace, but would have difficulty performing complex instructions. [AR at 254.]

On January 8, 2004, Dr. Reznick conducted a psychological evaluation. Dr. Reznick noted that plaintiff "presented with what appeared to be sub-optimal effort during [the] evaluation." [AR at 365.] He administered the Trailmaking test, but invalidated its results due to plaintiff's "sub-optimal effort." [AR at 370-71.] The doctor further observed that while the results of the Wechsler Adult Intelligence Scale - III ("WAIS - III") showed plaintiff's full scale I.Q. to be 54, plaintiff's overall presentation during the evaluation "suggest[s] an intellectual functioning that may be in the borderline range of intelligence, corresponding to Wechsler I.Q.'s in the 70's." [AR at 371.] Dr. Reznick ultimately diagnosed plaintiff with mood disorder (NOS) with anxiety, and borderline intellectual functioning, and opined that she would be able to understand, remember, and carry out all simple, some moderately complex, and no complex verbal instructions. [AR at 372.]

In the decision, the ALJ concluded that plaintiff has the following severe impairments: hypertension, obesity, and mood disorder (NOS). [AR at 17.] The ALJ went on to assess plaintiff's mental abilities, and found that she "is only slightly [footnote omitted] limited in her ability to perform simple work[,] [and] is moderately limited in her ability to perform detailed work activity, to make work-related judgments, to interact appropriately with the public, supervisors and co-workers, and to respond appropriately to work pressures and changes in a usual work setting." [AR at 23.]

In reviewing the relevant evidence, the ALJ noted the limitations assessed by Dr. Reznick, and stated they are "consistent with the conclusion reached in [the] decision." [AR at 21.] When questioning the VE, however, while the ALJ included plaintiff's limitations with respect to performing simple and complex work, he did not include plaintiff's status with respect to her borderline intellectual functioning. [See AR at 53-56.] "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (citing DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)). Numerous courts have held that a claimant's borderline intellectual functioning is a critical

finding that must be presented to the vocational expert. See, e.g., Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (remand warranted to allow vocational expert to consider the borderline intellectual functioning of claimant with full-scale I.Q. of 78); Pickney v. Chater, 96 F.3d 294, 296-97 (8th Cir. 1996) (remanding because ALJ failed to instruct VE to take into account the borderline intellectual functioning of claimant with full-scale I.Q. of 78).

Here, based on the record, it does not appear that Dr. Reznick's diagnosis of borderline intellectual functioning is contradicted by any other medical source. "The ALJ may reject an *uncontroverted* opinion of an [examining] physician only for clear and convincing reasons." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original); see also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). Although the ALJ made note of Dr. Reznick's opinion that plaintiff exhibited a "sub-optimal effort" during her evaluation, the ALJ did not make any express findings or conclusions to discredit the diagnosis of borderline intellectual functioning. Further, Dr. Reznick took into account plaintiff's level of effort in concluding that her I.Q. was in the 70s. Indeed, by observing that plaintiff's performance "suggested an intellectual functioning that may be in the borderline range in the 70's" as opposed to a "mildly mentally retarded range of intellectual functioning," it appears that the ALJ in fact endorsed the diagnosis. In effect, however, the ALJ's failure to include the borderline intellectual functioning as a limitation resulted in an implicit rejection of that portion of Dr. Reznick's opinion.[3] See, e.g., Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter); Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine

---

[3] Alternatively, because Dr. Edelman's assessment did not include a diagnosis of borderline intellectual functioning, it could be considered an opposing finding. In that event, the ALJ needed to set forth specific and legitimate reasons based on substantial evidence from the record to support the rejection of Dr. Reznick's opinion in favor of that of Dr. Edelman. See Nelsen v. Barnhart, 2003 WL 297738, **2-3 (N.D.Cal. Feb. 4, 2003) (rejection of controverted physician's opinion must be based on specific and legitimate reasons that are supported by substantial evidence in the record)(citing Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996)).

whether the reasons for rejection were improper."). The ALJ erred by not expressly providing any convincing reasons based on substantial evidence for rejecting the diagnosis of borderline intellectual functioning.

Remand is therefore in order. The Court directs the ALJ in the remand proceedings to properly consider and weigh Dr. Reznick's opinion with respect to the borderline intellectual functioning diagnosis. In the event the ALJ rejects Dr. Reznick's opinion, such rejection must be based on legally sufficient reasons. If the ALJ determines that substantial evidence supports Dr. Reznick's finding that plaintiff suffers from a borderline intellect, the ALJ should include this finding in a hypothetical propounded to the vocational expert. See Lucy, 113 F.3d at 908; Pickney, 96 F.3d at 296-97.

The Court also notes that, according to the Eighth Circuit in Lucy, "it appears that [a claimant's] borderline intellectual functioning [has] an impact on [the] capacity to perform ... work" that requires level two reasoning or higher.[4] Lucy, 113 F.3d at 909. Here, based on the hypotheticals provided by the ALJ, the VE determine that plaintiff could perform two occupations: laundry worker (DOT 361.684-014) and day worker (DOT 301.687-014). [AR at 53-56.] Both positions have a reasoning level of two (Joint Stip., Ex. 1). Thus, if the ALJ finds that plaintiff has a borderline intellect, the conclusion that she could perform the jobs described by the VE may be erroneous to the extent they involve duties that exceed plaintiff's mental capacity. Accordingly, upon remand, the ALJ must ensure that the hypotheticals accurately reflect the true extent of plaintiff's abilities and limitations. See Nguyen, 100 F.3d at 1466 n.3 ("Because the hypothetical

---

[4] Every job description in the Dictionary of Occupational Titles ("DOT") contains a General Educational Development ("GED") component. See DOT Appendix C. The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." See DOT Appendix C. The GED component is comprised of three elements -- reasoning development, mathematical development, and language development -- which are rated on a six-point scale ranging from level 1 (generally the least difficult) to level 6 (the most difficult or complex). For a reasoning level one position, the worker must be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." See id. Under reasoning level two, a worker must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." See id.

8

was incomplete, it does not constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert."); see also Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (expert did not base his opinion on the full extent of the plaintiff's limitations as the deficiencies were not included in the hypothetical question).

Because the result of this determination may impact other steps in the analysis, plaintiff's remaining claims will not be addressed herein.

## VI.

## REMAND IS APPROPRIATE

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider the diagnosis of borderline intellectual functioning. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 24, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE